IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

NANCY BORDEAU,

                      Plaintiff,

  v.                                               OPINION and ORDER

NORTHERN SERVICE BUREAU, INC.                  20-cv-282-jdp

                      Defendant.

---

      Plaintiff Nancy Bordeau sued defendant Northern Service Bureau, Inc. under the Fair Debt Collection Practices Act (FDCPA) for continuing to report a debt to a credit reporting agency after Bordeau disputed the debt. Bordeau accepted Northern Service's offer of judgment for $1,001 and now moves for fees and costs, as allowed under the terms of the offer. Dkt. 6.

      In her motion, Bordeau seeks $4,040 in attorney fees and $426.80 in costs. She supplemented her request to add an additional $2,720 for the time spent on her reply brief in support of her fee petition. Northern Service doesn't object to Bordeau's costs, so the court will award the requested amount. As for fees, Northern Service objects to both the requested hourly rate and the amount of time that Bordeau's counsel, Matthew C. Lein, spent on the case. Northern Service goes so far as to contend that the court should award a fee of $1 to "send the appropriate signal and set the stage to rid this court of these nuisance cases." Dkt. 8, at 14.

      The court will approve $3,840 in fees. Lein's requested $400 hourly rate is inflated for someone in his market, in his practice area, and with his level of experience. And some of his billing entries aren't justified. But Northern Service's contention that Bordeau's case is a "nuisance" is premised on a view that the FDCPA itself is a nuisance to debt collectors.

Northern Service doesn't deny that the conduct alleged in the complaint violates multiple provisions in the FDCPA, and disagreement with the law isn't a basis for reducing a fee award. So Northern Service isn't entitled to a further reduction of fees.

## ANALYSIS

**A. Entitlement to fees**

Under 15 U.S.C. § 1692k(a)(3), the court may award reasonable attorney fees "in the case of any successful action to enforce . . . liability" under the FDCPA. "[T]he award of attorney's fees to plaintiffs for a debt collector's violation of 'any provision' of the FDCPA is mandatory." *See also Zagorski v. Midwest Billing Servs., Inc.*, 128 F.3d 1164, 1166 (7th Cir. 1997).

In this case, Bordeau accepted an offer of judgment for $1,001, slightly more than the maximum amount of statutory damages. *Id.* § 1692k(a)(2)(A). There is no dispute that an accepted offer of judgment can qualify as a "successful action" as a general matter. *Cf. Kitchen v. TTX Co.*, 284 F.3d 688, 691 (7th Cir. 2002) ("A plaintiff who has accepted an offer of judgment presented by a defendant can, in certain circumstances, recoup his fees, if that plaintiff is a prevailing party and his recovery is not insubstantial."). But Northern Service cites *Dechert v. Cadle Co.*, 441 F.3d 474 (7th Cir. 2006), for the proposition that a "successful action" requires "*both* actual and statutory damages." Dkt. 8, at 11. That's incorrect. *Dechert* says that a "successful action" includes "liability for *either* actual or statutory damages." 441 F.3d at 475 (emphasis added). Bordeau's case is a successful FDCPA enforcement action.

So the question is whether Lein's requested fees are reasonable. In making this determination, the court uses the lodestar method, multiplying the attorney's reasonable hourly rate by the number of hours reasonably expended. *Hensley v. Eckerhart*, 461 U.S. 424,

433–37 (1983); *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011). Northern Service challenges the amount of Lein's fees on three grounds: (1) his hourly rate is unreasonable; (2) much of Lien's time isn't compensable; and (3) this lawsuit represents a "gross abuse" of the FDCPA rather than "an important vindication of a consumer's rights," Dkt. 8, at 13.

## B.  Reasonable rate

Lein asks the court to approve a rate of $400 per hour. The court assesses a reasonable hourly rate by looking at what is charged in the relevant market. *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003). The most persuasive evidence of reasonableness is the hourly rate that clients actually pay, both to the counsel in that case and to comparable lawyers performing similar work. *Broome v. Kohn Law Firm, S.C.*, No. 18-cv-860, 2019 WL 1595864, at *2 (W.D. Wis. Apr. 15, 2019); *Moffat v. Acad. Of Geriatric Physical Therapy*, No. 15-cv-626, 2017 WL 4217174, at *5 (W.D. Wis. Sept. 20, 2017). If that evidence isn't provided, the court may consider fees awarded in other cases. *Pickett*, 664 F.3d at 640. The court will consider whether Lein has provided each type of evidence to support his requested rate.

### 1.  Rate paid by Lein's clients

Lein had a contingency fee agreement in this case, so that agreement doesn't help him establish a reasonable rate. *See Montanez v. Simon*, 755 F.3d 547, 553–54 (7th Cir. 2014). But Lein cites a 2018 agreement in which he charged $300 an hour in a different case, Dkt. 7-3, and he contends that a $400 hourly rate is appropriate in this case because contingency cases include a substantial risk of nonpayment. Both parts of Lein's argument are flawed.

First, the 2018 agreement provides little guidance. It is only one case, so it is weak evidence of Lein's normal rate. Lein doesn't say what type of case it was, which is relevant to

3

determining the appropriate market rate. *See Missouri v. Jenkins*, 491 U.S. 274, 286 (1989). And Lein doesn't say whether the client in that case actually paid the charged rate.

Second, "[n]either the Supreme Court nor [the court of appeals] has implied that district courts should adjust the hourly rate of comparable attorneys to reach an hourly rate for a contingent-fee-earning attorney." *Pickett*, 664 F.3d at 641. Rather, the goal is to make an apples-to-apples comparison of the "hourly rates that attorneys of comparable skill, experience, and reputation charge for similar work." *Id.* So Lein's 2018 fee agreement isn't persuasive evidence of a reasonable rate in this case.

### 2. Rates charged by comparable lawyers

In the absence of actual billing rates, the next best evidence is what comparable lawyers in the relevant market charge. *See id.* at 640. "Preferably, this is third-party evidence of the hourly rates charged by attorneys of similar experience doing similar work." *Mowery v. Metro. Life Ins. Co.*, No. 16-cv-516-jdp, 2017 WL 3575857, at *2 (W.D. Wis. Aug. 18, 2017).

Lein doesn't cite evidence from other attorneys. Instead, he cites a portion of the U.S. Consumer Law Attory Fee Survey Report. Dkt. 7-1. This court hasn't relied on the survey in the past, noting that many courts in this circuit have questioned the survey's reliability. *See, e.g.*, *Humphrey v. Navient Sols., Inc.*, No. 16-cv-370-jdp, 2020 WL 4047955, at *5 (W.D. Wis. July 20, 2020). In any event, Lein cites the survey without explaining why it supports his proposed rate, so the court declines to consider it.

### 3. Fees awarded in other cases

Lein cites three cases in which he says that a court approved a $400 hourly rate for him. But none of those cases are instructive. One case was filed in state court; one case was filed in bankruptcy court; and one case was filed in this court. He provides no information about the

state court case or the bankruptcy case, so the court cannot compare those cases to this one. *See Iroanyah v. Bank of Am.*, 753 F.3d 686, 694 (7th Cir. 2014). The case in this court was an FDCPA class action that was resolved through a settlement. *Veness v. Heywood, Cari & Anderson, S.C.*, No. 17-cv-338-bbc, 2018 WL 4489277 (W.D. Wis. May 17, 2018). The court approved a lump sum for attorney fees but did not conduct a lodestar analysis. *Id.* at *3. So none of these cases are persuasive evidence that a $400 hourly rate is justified in this case.

Neither Lein in his opening brief nor Northern Service in its opposition briefs cite other cases in which a court considered a reasonable hourly rate of a lawyer with similar experience doing similar work. In his reply brief, Lein cites one case in which the court approved a $395 hourly rate in an FDCPA case that resulted in a default judgment. *See Johll v. Premier Recovery Grp., Inc.*, No. 14-cv-60-wmc, 2014 WL 1512028, at *2 (W.D. Wis. Apr. 16, 2014). But that case provides limited guidance as well. The hourly rate wasn't disputed, and the court didn't consider any of the factors that normally are part of a reasonable rate analysis, including the experience of the lawyer or what other lawyers have been paid for similar work. *See Blum v. Stenson,* 465 U.S. 886, 895, n. 11 (1984); *Iroanyah,* 753 F.3d at 694.

More instructive is *Humphrey*, in which this court recently reduced a rate from a requested $350 an hour to $300 an hour for a Madison consumer lawyer with 11 years of experience. 2020 WL 4047955, at *5. The court relied on several other cases from around the circuit to arrive at that conclusion.

Lein's brief doesn't discuss his location or level of experience, but Lein's CV says that he graduated from law school in 2011 and his office is located in Hayward, Wisconsin. His stated practice areas do not include any specialty that commands a premium rate. Under these circumstances, the court finds that a rate of $300 an hour is appropriate.

5

**C. Reasonable hours**

Lein seeks to be compensated for 16.9 hours of work, which includes 7.7 spent briefing his fee petition, including both the initial petition and his reply brief. Northern Service raises numerous objections to Lein's time entries, but they fall into four general categories: (1) administrative tasks; (2) excessive time; (3) the fee petition; and (4) unnecessary work.

**1. Administrative tasks**

In evaluating a fee petition, "the district court should disallow time spent on what are essentially 'clerical' or secretarial tasks." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999); *see also Montanez*, 755 F.3d at 555 (district court did not abuse discretion by excluding time billed for clerical work, including scanning and faxing performed by a partner). There is a "gray area" between the type of work that should be performed by a lawyer or by a paralegal or administrative assistant. *Jenkins*, 491 U.S. at 288. And many of Northern Service's objections fall into this gray area, such as routine communication with the client or defense counsel and time spent investigating the claim. The court declines to reduce Lien's fees for those tasks. But the court concludes that some of the challenged entries could have been readily performed by clerical staff:

- Scanning materials (.5 hours)
- Receiving the case number and entering into the complaint (.2 hours)
- Filing the case (.4 hours)
- Looking for and communicating with the process server (1.5 hours)

Lien doesn't explain why any of these entries are appropriately classified and billed as legal work, so the court will deduct 2.6 hours from Lien's fee award.

## 2. Excessive time

Northern Service challenges as excessive the amount of time billed for drafting the summons and complaint (1.1 hours) and for discussing the offer of judgment with the client before deciding to accept it (1 hour).

Northern Service contends that the time billed for drafting the complaint is excessive because it is nearly identical to other complaints filed by Bordeau against other debt collectors. Northern Service also says that the differences among the complaints are so minor that the task of drafting the complaint could have been delegated to an administrative assistant.

The court agrees with Lein that allowing administrative staff to draft a complaint could subject a lawyer to sanctions under Federal Rule of Civil Procedure 11, which requires the lawyer who signed the complaint to conduct a reasonable inquiry to determine that the allegations and contentions in the complaint have evidentiary and legal support. In any event, spending little more than an hour on drafting a complaint is not excessive, even if the task was relatively straightforward.

Northern Service also says that it is excessive "to spend one full hour talking about accepting or not an offer of judgment for the full amount of statutory damages that could ever be awarded for this violation." Dkt. 8, at 9. Lein doesn't take issue with Northern Service's general point that the offer of judgment left little room for discussion. Instead, he suggests that most of that time was spent on unsuccessful attempts to contact Bordeau. *See* Dkt. 10, at 9 ("[M]ost of my time is trying to reach clients."). But the billing entry reads, "Called client and explained OOJ. Accepted offer of judgment with client's permission." Dkt. 7-2. There is no mention of unsuccessful attempts to contact the client. So the court will deduct .5 hours from this entry.

7

### 3. Fee petition

Time spent on preparing a fee petition is compensable. *See Robinson v. City of Harvey, Ill.* 617 F.3d 915, 917 (7th Cir. 2010). Northern Service objects to the .9 hours that Lein billed for his opening brief, but its reason is difficult to discern. It says:

> This is being objected to since the Plaintiff's attorney bargained in bad faith regarding fees. After overreaching to demand fees for administrative tasks, he requested Defendant's counsel's fees for an unknown purpose, then failed to respond to anything regarding what he would do with that information, let alone respond to the point that he cannot charge for administrative tasks. This entry is also a block billing and including administrative tasks.

Dkt. 8, at 7.

Northern Service's primary argument appears to be that Lein shouldn't be compensated for his fee petition because Northern Service has objected to many of his billing entries. The court has accepted some of Northern Service's arguments, but .9 hours is a modest amount of time, even if Lein may have been overreaching on some issues.

Northern Service also doesn't explain its objection about block billing, which is the practice of including multiple tasks in the same billing entry without identifying how much time was spent on each task. *Boehm v. Martin*, No. 15-cv-379-jdp, 2017 WL 5186468, at *6 (W.D. Wis. Nov. 8, 2017).[1] Northern Service's objection appears to be that some of the time

---

[1] Northern Service also raises a more general objection that block billing pervades "much" of Lein's time sheet. Dkt. 8, at 4. But Northern Service points to only one other example, an entry for .6 hours that states, "Speak with client about claim. Get signature on representation agreement." Northern Service says that getting a signature is another administrative task, so Lein's failure to include separate entries for these tasks means that neither is compensable. But the amount of time it takes to obtain a signature is negligible, so the court declines to deduct time from this entry. *See Fox v. Vice,* 563 U.S. 826, 838 (2011) ("The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection.").

attributed to the fee petition includes noncompensable administrative tasks because the billing entry includes tasks such as "edited heading" and "added exhibits." But these tasks fall fairly within the ambit of legal work, particularly in the context of preparing a brief. The court doesn't expect counsel to delegate every keystroke or mouse click that theoretically could be handled by clerical staff. Those tasks are part of the larger legal task of preparing the brief, so the court declines to reduce Lein's time spent on his opening brief.

Lein seeks fees for 6.8 hours spent preparing his 12-page reply brief. The court concludes that was a reasonable amount of time in light of the 15-page opposition brief that Northern Service filed.

### 4. Unnecessary work

Northern Service objects to a billing entry of 1.5 hours for the following tasks: "Est. time to complete file. Settlement Statement, Draft Stip for Dismissal, File Stip for Dismissal, Cut Checks." Northern Service objects to this entry on the reasonable ground that there was no stipulation of dismissal in this case, so there was no need to draft or file one.

Lein doesn't respond directly to Northern Service's objection. Instead, he writes:

> As a matter of practice, whenever I receive a check from a defendant in a setting where funds will likely be sent to my trust account, I prepare and have a client sign a settlement statement indicating how much was received and how the funds will be disbursed. In the event a client needs to have proof of how funds were disp[e]rsed, I have proof.

Dkt. 10, at 6. This may explain what Lein meant by "Settlement Statement," but it doesn't explain "Draft Stip for Dismissal" or "File Stip for Dismissal." Lein neither says that he included those tasks by mistake nor contends that it took him 1.5 hours to prepare the settlement statement. The court will reduce this entry to .5 hours.

**D. Policy objections**

Northern Service contends that Lein should be awarded "little if any of the lodestar amount" because "his efforts are not really pursuing a worthwhile goal." Dkt. 8, at 14. Northern Service explains:

> Let us be frank. This kind of a set-up case to show what is largely a technical violation of the FDCPA comes with the caveat that no legal principle is established nor is the success anything other than nominal. Even here where the Defendant offered the full statutory damage amount in an effort to end the litigation before it ever began, it still amounts to a nuisance settlement amount. It is the hallmark of these cases. And as the Plaintiff's counsel says, he tries to be efficient. He can process one of these cases in record time, by sending a letter and "producing" a technical violation of the Act. But what has really been accomplished? No legal principle has been established.

Dkt. 8, at 13.

In support of its argument for a greatly reduced fee, Northern Service relies on *Farrar v. Hobby*, 506 U.S. 103, 114 (1992), in which the Supreme Court held that "the only reasonable fee" was "no fee at all" in a case in which the plaintiff sought $17 million in damages, litigated the case for 10 years, and then only received $1 in nominal damages. Northern Service contends that *Farrar* allows a court to deny or greatly reduce fees in cases like this one involving "technical" violations that don't establish a new legal principle.

The Court of Appeals for the Seventh Circuit long ago rejected Northern Service's view of the law. *Farrar* applies when "the plaintiff was aiming high and fell far short, in the process inflicting heavy costs on his opponent and wasting the time of the court." *Hyde v. Small*, 123 F.3d 583, 585 (7th Cir. 1997) (citations omitted). It doesn't apply when "the case was simply a small claim and was tried accordingly." *Id.* In this case, Bordeau wasn't seeking millions of dollars in damages. And Northern Service consented to a judgment for the maximum amount

of statutory damages before any significant proceedings occurred. So this case is nothing like *Farrar*.

Northern Service suggests that an award of statutory damages is akin to the award of nominal damages in *Farrar*, suggesting a low degree of success in this case. *See Farrar*, 506 U.S. at 114 ("[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained."). But the court of appeals has rejected the view that statutory damages and nominal damages are equivalent. In *Tolentino v. Friedman*, 46 F.3d 645, 653 (7th Cir. 1995), the court held that the plaintiff "obtained a high degree of success" under *Farrar* when she prevailed on her FDCPA claim at summary judgment and recovered the maximum statutory damages allowed to an individual plaintiff. Northern Service consented to judgment for the maximum amount of Bordeau's statutory damages, so Bordeau obtained a high degree of success under *Tolentino*.

Northern Service also says that a reduced fee is appropriate because the case didn't establish any new law. Again, that view is inconsistent with circuit precedent. In *Zagorski v. Midwest Billing Servs., Inc.*, 128 F.3d 1164, 1167 (7th Cir. 1997), the court of appeals reversed a district court decision denying attorney fees for what it viewed as a technical violation of the FDCPA. The court of appeals wrote that "the cumulative effect of petty violations may not be petty, and if this is right then the mere fact that the suit does not result in a large award of damages or the breaking of new ground is not a good ground for refusing to award any attorneys' fees." *Id.* (internal quotation marks and alterations omitted). The court also observed that the deterrent effect of litigation may be an important consideration when evaluating the degree of success obtained by a particular plaintiff. *Id.* at n.6.

Many if not most violations of the FDCPA involve technical failures that do not cause significant harm in the individual case. But this was anticipated by Congress when it established a fee-shifting provision in the FDCPA:

> Fee-shifting provisions signal Congress' intent that violations of particular laws be punished, and not just large violations that would already be checked through the incentives of the American Rule. The function of an award of attorney's fees is to encourage the bringing of meritorious claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel. Or, more simply stated, fee-shifting helps to discourage petty tyranny.

*Anderson v. AB Painting and Sandblasting Inc.*, 578 F.3d 542, 545 (7th Cir. 2009) (internal quotation marks and citations omitted).

The FDCPA is a classic example of a statute designed to "discourage petty tyranny." An individual violation may not cause substantial harm, but Congress understood that many abusive debt-collection practices would go unchecked without an incentive for lawyers to take smaller cases. If the court were to adopt Northern Service's view, it would leave the FDCPA largely unenforced. That may be Northern Service's desired outcome, but it's not consistent with the law.

**E. Conclusion**

Northern Service makes it clear throughout its brief that it believes that Bordeau's claim is unimportant and that requiring Northern Service to pay fees is unfair. But that is an issue to take up with Congress, not this court. The court finds that Bordeau is entitled to fees for 12.8 hours (16.9, less the disallowed time of 2.6, .5, and 1) at a rate of $300 an hour for a total of $3,840 in fees, along with $426.80 in costs.

ORDER

IT IS ORDERED that plaintiff Nancy Bordeau's motion for fees and costs is GRANTED in part. Bordeau is awarded $426.80 in costs and $3,840 in fees.

Entered October 23, 2020.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge